**Electronically Filed
Intermediate Court of Appeals
30624
29-NOV-2012
08:24 AM**

NO. 30624

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
MALAKI McBRIDE, Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 08-1-0114)


MEMORANDUM OPINION
(By: Nakamura, C.J., and Fujise and Ginoza, JJ.)


Defendant-Appellant Malaki McBride (McBride) was charged by indictment with: (1) second-degree murder for intentionally or knowingly causing the death of Tyrone Torres (Torres), in violation of Hawaii Revised Statutes (HRS) § 707-701.5(1) (1993)[1] (Count 1); (2) unauthorized control of a propelled vehicle (UCPV), in violation of HRS § 708-836(1) (Supp. 2011)[2] (Count 2); (3) carrying or use of a firearm while engaged in the commission of a separate felony, namely, second-degree murder and any included felony offense, in violation of HRS

---

[1] HRS § 707-701.5 provides in relevant part that "a person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person."

[2] HRS § 708-836 provides in relevant part:

> (1)   A person commits the offense of unauthorized control of a propelled vehicle if the person intentionally or knowingly exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent . . . .

§ 134-21(a) (2011)[3] (Count 3); and (4) second-degree arson, in violation of HRS § 708-8252(1)(b) (Supp. 2011)[4] (Count 4).

Because McBride was seventeen and a juvenile at the time of the alleged offenses, he was originally under the jurisdiction of the family court. However, the family court issued an order granting the petition for waiver of jurisdiction filed by Plaintiff-Appellee State of Hawai'i (State), and jurisdiction was transferred to the Circuit Court of the Third Circuit (Circuit Court).[5]

Prior to trial, McBride and the State entered into stipulations which narrowed the issues for trial. The Circuit Court questioned McBride about the stipulations in order to confirm that McBride had entered into the stipulations knowingly, intelligently, and voluntarily.

With respect to the second-degree murder charged in Count 1, McBride stipulated that he knowingly caused the death of Tyrone Torres with the use of a firearm. Therefore, the only remaining issue as to Count 1 was whether McBride was under the

---

[3] HRS § 134-21 provides in relevant part:

     (a) It shall be unlawful for a person to knowingly carry on the person or have within the person's immediate control or intentionally use or threaten to use a firearm while engaged in the commission of a separate felony, whether the firearm was loaded or not, and whether operable or not . . . .

     (b) A conviction and sentence under this section shall be in addition to and not in lieu of any conviction and sentence for the separate felony; provided that the sentence imposed under this section may run concurrently or consecutively with the sentence for the separate felony.

[4] HRS § 708-8252(1)(b) provides:

     (1) A person commits the offense of arson in the second degree if the person intentionally or knowingly sets fire to or causes to be burned property and:

     . . .

     (b) Knowingly or recklessly damages the property of another, without the other's consent, in an amount exceeding $1,500.

[5] The Honorable Glenn S. Hara presided over the proceedings relevant to this appeal.

influence of extreme mental or emotional disturbance (EMED) for which there was a reasonable explanation, when he caused Torres's death. McBride's stipulation that he knowingly caused the death of Torres with the use of a firearm was in essence an admission to carrying or use of a firearm while engaged in the commission of a separate felony, as charged in Count 3. In addition to his stipulation, McBride separately entered a guilty plea as to Count 3, which was accepted by the Circuit Court.

With respect to the UCPV charged in Count 2, McBride stipulated that he knowingly operated a motor vehicle owned by his sister, Puanani McBride (Puanani), without seeking her specific permission on the date charged. Therefore, the only issue as to Count 2 was whether McBride operated Puanani's vehicle knowing that she did not consent to his use of it. Prior to trial, the State apparently withdrew Count 4, which was not presented to the jury at trial.

As the result of McBride's guilty plea to Count 3 and the State's withdrawal of Count 4, the case proceeded to trial only on Counts 1 and 2. In addition, because of McBride's stipulations, the remaining issues at trial were limited to: (1) whether, as to Count 1, McBride could prove the affirmative defense of EMED, which would reduce the offense of second-degree murder to manslaughter;[6] and (2) whether, as to Count 2, McBride knew his sister had not consented to his use of her car.

The jury found McBride guilty as charged of Counts 1 and 2. The Circuit Court sentenced McBride to life imprisonment as to Count 1, five years of imprisonment as to Count 2, and

---

[6] HRS § 707-702(2) (Supp. 2011), which sets forth the affirmative defense of manslaughter, provides in relevant part:

    (2) In a prosecution for murder . . . in the first and second degrees it is an affirmative defense, which reduces the offense to manslaughter . . . , that the defendant was, at the time the defendant caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the defendant believed them to be.

twenty years of imprisonment as to Count 3. The Circuit Court ordered Counts 2 and 3 to run concurrently to each other, but consecutively to Count 1. The Circuit Court filed its Judgment of Conviction and Sentence (Judgment) on July 13, 2010.

On appeal, McBride contends that: (1) his trial counsel failed to provide effective assistance of counsel with respect to the presentation of McBride's affirmative defense of EMED; (2) the Circuit Court erred in instructing the jury on the EMED defense by giving an instruction that was confusing and misleading; and (3) the Circuit Court violated State v. Hussein, 122 Hawai'i 495, 229 P.3d 313 (2010), by failing to state its reasons for imposing consecutive rather than concurrent sentences.

As explained below, we conclude that the Circuit Court erred in instructing the jury on McBride's EMED defense and that this error was not harmless beyond a reasonable doubt. We therefore vacate McBride's conviction on Count 1 and remand the case for a new trial on Count 1. In light of our decision, we need not address McBride's other points of error. Because McBride does not challenge his convictions on Counts 2 and 3, we affirm those convictions. In addition, our decision to vacate Count 1 eliminates the consecutive sentences imposed by the Circuit Court, and we affirm the concurrent sentences of imprisonment imposed on Count 2 (five years) and Count 3 (twenty years).

BACKGROUND

I.

Prior to jury selection, the Circuit Court advised the prospective jurors of the charges in Counts 1 and 2 and, pursuant to McBride's stipulation with the State, also informed the prospective jurors as follows:

> [I]n this case, the defendant has stipulated and agreed that on or about February 25, 2007, in Puna, County and State of Hawai'i, the defendant Malaki McBride knowingly caused the death of Tyrone Torres with the use of a firearm.

> Stipulations are conclusive statement of fact,
> therefore, the only remaining issue as to Count 1 is whether
> at the time Malaki McBride caused the death of Tyrone
> Torres[,] Malaki McBride was under the influence of extreme
> mental or emotional disturbance for which there is a
> reasonable explanation.
>
> The reasonableness of the explanation shall be
> determined from the view point of a person in the
> defendant's situation under the circumstances as he believed
> them to be.
>
>    . . . .
>
>    . . . . [D]efendant Malaki McBride has stipulated and
> agreed that on or about February 25, 2007, in Puna, County
> and State of Hawai'i, the defendant McBride Malaki [sic]
> knowingly operated a motor vehicle owned by sister Puanani
> McBride without seeking her specific permission on that
> date.
>
> The stipulation is a conclusive statement of fact and,
> therefore, the only remaining issue is whether Malaki
> McBride operated Puanani McBride's vehicle knowing she did
> not consent to the use of her vehicle.

("[sic]" notation added).

After opening statements and prior to the State calling its first witness, the Circuit Court again advised the jury that McBride had stipulated that he: (1) "knowingly caused the death of Tyrone Torres with the use of a firearm"; and (2) "knowingly operated a motor vehicle owned by his sister, Puanani McBride, without her specific permission."

II.

The following evidence was presented at trial. At the time of the charged offenses, McBride was seventeen years old and his girlfriend, AS, was sixteen years old. According to Puanani, McBride had dropped out of school and after a fight with his father, had moved out of the house. McBride went to live with AS at the house of Steward Shepard (Shepard). McBride and AS were having problems in their relationship, which resulted in McBride becoming depressed and suicidal.

Robert Brockway, III (Brockway) was a friend of McBride. According to Brockway, on the evening of February 24, 2007, Brockway went to a party with McBride and other friends. Around midnight, Brockway left the party in AS's car along with

5

AS, AS's sister, and Tyrone Torres. Brockway was dropped off in Nānāwale Estates, where McBride approached Brockway and asked what he was doing with AS. McBride appeared upset after Brockway identified the people in AS's car and Brockway said he thought "the two girls had too much to drink." Brockway accompanied McBride to Puanani's house, where McBride obtained the keys to Puanani's car. McBride drove Puanani's car to Brockway's house, where Brockway had been keeping guns that belonged to McBride. After McBride obtained the guns and put them in Puanani's car, McBride and Brockway got into the car and McBride began driving around looking for AS. McBride drove to Torres's house, where McBride got out and yelled for Torres, but was told that Torres was not there. McBride also drove by Shepard's house and the house of AS's parents.

Eventually, McBride drove to a dead end near Sea View where he saw AS's car parked. The lights for AS's car were off and the windows were foggy. McBride got out of his sister's car, walked to the passenger side of AS's car, opened the door, took a step back, and fired one shot from a sawed-off shotgun.

AS was "[h]aving sex" with Torres when she saw headlights approach her car. AS saw her car door open and heard a loud noise.

McBride shot Torres and killed him. After the shooting, AS got out of her car. Both AS and McBride were "freaking out." McBride told AS to get into Puanani's car and instructed Brockway to drive Puanani's car and to follow McBride. McBride got into AS's car and drove it with Torres's body still inside. Eventually, McBride drove to Wa'awa'a and abandoned AS's car. Brockway dropped AS off at a friend's house. AS told other people that McBride had told her to take off her clothing because there was blood on it.

In the early morning on February 25, 2007, Puanani called the police to report that her car had been stolen. She believed that her brother McBride had taken the car. McBride did not ask Puanani for permission prior to taking the car. Brockway

returned Puanani's car at about 4:00 or 5:00 a.m.  Puanani and her family looked for McBride and later found him in the attic of their house.

Both the State and McBride called experts to testify on the issue of EMED.  McBride called Dr. Sheila Wendler, a forensic psychologist, who opined that McBride was under the influence of EMED at the time he shot Torres.  The State called Dr. Harold Hall, a neuropsychologist, who opined that McBride was not under the influence of EMED at the time of the shooting.

DISCUSSION

I.

We conclude that the dispositive issue in this case is whether the Circuit Court erred in instructing the jury on the EMED defense.  Based on the court reporter's transcription of the Circuit Court's oral instructions to the jury, which the State did not challenge but instead concedes was accurately transcribed, we conclude that the Circuit Court erred in instructing the jury on the EMED defense and that this error was not harmless beyond a reasonable doubt.

The oral instruction given to the jury on the EMED defense differed from the written instruction the parties had agreed upon.  McBride did not object to the Circuit Court's reading of the EMED instruction.  However, based on State v. Nichols, 111 Hawai'i 327, 141 P.3d 974 (2006), a defendant need not object to a faulty jury instruction regarding the elements necessary to prove a charge or a permissible defense in order to preserve the issue for appeal.  Under Nichols, once such instructional error is established on appeal, the appellate court will vacate the conviction "without regard to whether timely objection was made, if there is a reasonable possibility that the error contributed to the defendant's conviction, i.e., that the erroneous jury instruction was not harmless beyond a reasonable doubt."  Id. at 337, 141 P.3d at 984.

II.

The Circuit Court orally instructed the jury on the elements of second-degree murder as follows:

> In Count 1 of the Indictment, the Defendant MALAKI MCBRIDE is charged with the offense of Murder in the Second Degree.
>
> A person commits the offense of Murder in the Second Degree if he intentionally or knowingly causes the death of another person.
>
> There are two material elements of the offense of Murder in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are:
>
> 1.    That on or about the 25th day of February, 2007, in the County and State of Hawaii, the Defendant intentionally or knowingly engaged in conduct; and
>
> 2.    That by engaging in that conduct, the Defendant intentionally or knowingly caused the death of TYRONE TORRES.

(quotation marks omitted).

The Circuit Court then began reading the EMED instruction agreed upon by the parties. The first part of the EMED instruction read by the Circuit Court essentially tracked the language of the agreed upon written instruction, as follows:

> If and only if you unanimously find that all of the elements of Murder in the Second Degree have been proved [sic] by the prosecution beyond a reasonable doubt, then you must consider the affirmative defense of Extreme Mental or Emotional Disturbance.
>
> Extreme mental or emotional disturbance has two elements. These two elements are:
>
> 1.    That the Defendant Malaki McBride was, at the time he caused the death of Tyrone Torres, under the influence of extreme mental or emotional disturbance; and
>
> 2.    That there is [sic] a reasonable explanation for the extreme mental or emotional disturbance. The reasonableness of the explanation shall be determined from the viewpoint of a reasonable person in the circumstances as the Defendant believed them to be.
>
> The Defendant must prove an affirmative defense by a preponderance of the evidence. This means that the Defendant must prove that it is more likely than not, or more probable than not, that each element of

> Extreme Mental or Emotional Disturbance occurred.  In determining whether the Defendant has proven an affirmative defense by a preponderance of the evidence, you must consider all of the evidence that has been presented to you regardless of who presented it.

("[sic]" notations in original; quotation marks omitted).[2]

However, at this point, the instruction as read by the Circuit Court departed significantly and materially from the agreed upon written instruction.  The written instruction provided:

> If you <u>unanimously find</u> that the Defendant has proven the elements of the affirmative defense by a preponderance of the evidence, then you must find the Defendant guilty of Manslaughter based upon Extreme Mental or Emotional Disturbance.  If you unanimously find that the Defendant has not proven the elements of the affirmative defense by a preponderance of the evidence then you must find the Defendant guilty of Murder in the Second Degree.
>
> If you are unable to reach a unanimous agreement as to whether the affirmative defense has been proved or not been proved, then a verdict may not be returned on the Murder in the Second Degree charge.

(Emphasis added.)

Instead, the Circuit Court read the instruction as follows:

> If you <u>are unable [sic] to find</u> that the Defendant has proven the element [sic] of the affirmative defense by a preponderance of the evidence, then you must find the Defendant guilty of Manslaughter based on [sic] Extreme Mental or Emotional Disturbance.  If you unanimously find that the Defendant has not proven the elements of the affirmative defense by a preponderance of the evidence then you must find the Defendant guilty of Murder in the Second Degree.
>
> If you are unable to reach a unanimous verdict [sic] as to whether the affirmative defense has been proven [sic] or not been proven [sic], then a verdict may not be returned on the Murder in the Second Degree charge.

(Emphasis added.) ("[sic]" notations in original; quotation marks omitted).

---

[2] The "[sic]" notations were inserted by the court reporter to reflect departures from the written instruction.  There is a "[sic]" after "proved" where the written instruction uses the word "proven" and a "[sic]" after "is" where the written instruction uses the word "was."

The Circuit Court completed its verbal instruction on the EMED defense as follows:

> An extreme mental or emotional disturbance is the emotional state of an individual, who has an extreme emotional reaction to an unusual and overwhelming stress as a result of which there is a loss of self-control and reason is overborne by intense feelings, such as passion, anger, distress, grief, excessive agitation or similar emotions.
>
> The question of the Defendant's self-control, or lack of it, at the time of the offense, is a significant factor in deciding whether he was under the influence of extreme mental or emotional disturbance.

(quotation marks omitted).

### III.

The critical discrepancy between the EMED instruction as read to the jury and the agreed upon written instruction is that the written instruction correctly instructs the jury: "If you <u>unanimously find</u> that the Defendant has proven the elements of the affirmative defense by a preponderance of the evidence, then you must find the Defendant guilty of Manslaughter based upon Extreme Mental or Emotional Disturbance." (Emphasis added). On the other hand, the Circuit Court's verbal instruction, as transcribed by the court reporter, erroneously instructs the jury: "If you <u>are unable [sic] to find</u> that the Defendant has proven the element [sic] of the affirmative defense by a preponderance of the evidence, then you must find the Defendant guilty of Manslaughter based on [sic] Extreme Mental or Emotional Disturbance." (Emphasis added) ("[sic]" notations in original).

We note that the difference between the correct phrase "if you unanimously find" and the transcribed phrase "if you are unable to find" raises the possibility of a transcription error by the court reporter. In other words, that the Circuit Court read the phrase correctly but the Circuit Court's verbal statement was misheard or mis-transcribed by the court reporter.

However, after the transcript was filed in this appeal, the State did not seek to challenge or move to correct the court reporter's transcription pursuant to Hawai'i Rules of Appellate

Procedure (HRAP) Rule 10(e) (2010).[8/]  Instead, in its answering brief, the State asserts that it "agrees [with McBride] that the court erroneously read the EMED instruction to the jury," thereby conceding that the court reporter's transcription was accurate. In light of the State's agreement and concession, we assume that the transcript accurately reflects the Circuit Court's oral instruction to the jury.  Therefore, the only question for this court is whether the Circuit Court's erroneous reading of the EMED instruction was harmless beyond a reasonable doubt.

The Circuit Court's misreading of the EMED instruction not only rendered the instruction wrong on the law, but also utterly confusing and misleading.  The Circuit Court's misreading of the instruction resulted in the jury receiving an instruction on the law that was basically the opposite of the correct legal rule.  Under the Circuit Court's oral instruction, the jury was directed that it must find McBride guilty of manslaughter if it was "unable to find" that he had proven the affirmative EMED defense.  Moreover, at the same time, the jury was directed that it must find McBride guilty of second-degree murder if it unanimously found that he had failed to prove the EMED defense. These two directions are contradictory.  Perhaps most significantly, because of the misreading of the instruction,

---

[8/] HRAP Rule 10(e) provides, in relevant part:

**(e) Correction or modification of the record.**

(1)    If any differences arise as to whether the record truly discloses what occurred in the court or agency appealed from, the differences shall be submitted to and settled by that court or agency and the record made to conform to the truth.

(2)    If anything material to any party is omitted from the record by error or accident or is misstated therein, corrections or modifications may be as follows:

(A)    by the stipulation of the parties; or

(B)    by the court or agency appealed from, either before or after the record is transmitted; or

(c)    by direction of the appellate court before which the case is pending, on proper suggestion or its own initiative.

11

there was no verbal instruction by the Circuit Court on what the jury must do if it unanimously found that McBride had proven the affirmative EMED defense. In other words, the Circuit Court's oral instructions to the jury failed to include an instruction directing the jury to find McBride guilty of manslaughter if it unanimously determined that he had successfully proven the EMED defense.

McBride's EMED defense was the key issue in dispute -- indeed it was the only issue in dispute -- regarding the second-degree murder charge. McBride had stipulated that he knowingly caused the death of Torres with the use of a firearm. Thus, the Circuit Court's error in instructing the jury went to the heart of the lead charge in the case. Although written jury instructions were passed out to the jurors during the Circuit Court's oral charge, the Circuit Court did not require the jurors to read along while it gave the instructions, but told the jurors that they "may simply just listen to the instructions as I give them to you."

In addition, while the record reflects that written jury instructions were provided to the jurors during the Circuit Court's oral charge, it does not clearly show that the jury was provided with written jury instructions during its deliberations.[2] Moreover, the record does not include the set of written instructions that was provided to the jury while the Circuit Court orally gave its instructions. The record contains filed jury instructions proposed by the State, McBride, and the Circuit Court, with check marks indicating whether the instruction was withdrawn, refused, given by agreement, given

---

[2] The record reflects that the Circuit Court referred to having prepared a set of instructions to be submitted to the jury, then passed out written instructions to the jury during the first part of its oral charge, collected the written instructions during the parties' closing arguments, then again passed out the written instructions for the conclusion of its oral charge. The record, however, does not contain a specific reference to the written instructions being provided to the jury during its deliberations.

over objection, given as modified by agreement, or given as modified over objection. However, a set of the actual written jury instructions submitted to the jury was not filed and is not included in the record.[10] Under the circumstances of this case, we cannot say that the error in the Circuit Court's oral instruction to the jury on the EMED defense was harmless beyond a reasonable doubt. See State v. Iosefa, 77 Hawai'i 177, 181-84, 880 P.2d 1224, 1128-31 (App. 1994) (concluding that the trial court's failure to read instruction on the burden of proof and reasonable doubt, which was included in the written set of instructions received by the jury, constituted error that was not harmless beyond a reasonable doubt).[11]

In light of our decision, we need not address the other issues McBride raises on appeal.

CONCLUSION

We vacate the Judgment with respect to McBride's conviction on Count 1, and we remand the case for a new trial on Count 1. Our decision to vacate Count 1 eliminates the consecutive sentences imposed by the Circuit Court. We affirm

---

[10] The State did not attempt to supplement the record with a set of the instructions submitted to the jury pursuant to HRAP Rule 10(e).

[11] State v. Sale, 110 Hawai'i 386, 133 P.3d 815 (App. 2006), a case cited by the State in support of its claim of harmless error, is distinguishable. In Sale, this court, in a footnote, noted that the transcript of the trial court's oral instructions to the jury on the UCPV charge used the word "another" rather than the word "another's" that was contained in the written instructions provided to the jury during its deliberations. Sale, 110 Hawai'i at 399 n.17, 133 P.3d at 828 n.17. Under the circumstances of that case, we stated that if the court had indeed misread the instruction, any error was cured or rendered harmless by the jury's being provided with the correct written instruction. Id. However, in Sale, unlike in this case, the discrepancy, as transcribed, between the oral and written instruction was minor; Sale did not raise the discrepancy as an issue on appeal; the State did not concede that the trial court had misread the instruction; the written instructions provided to the jury were included in the record; and other portions of the trial court's oral instruction established and made clear that the charge required proof that "another's" propelled vehicle had been operated by the defendant. Accordingly, Sale does not compel the conclusion that the error in this case was harmless beyond a reasonable doubt.

13

the Judgment with respect to the convictions on Counts 2 and 3 and the concurrent sentences imposed on Counts 2 and 3.

DATED:   Honolulu, Hawai'i, November 29, 2012.

On the briefs:

Cynthia A. Kagiwada
for Defendant-Appellant

Michael S. Kagami
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

Associate Judge

Associate Judge

14